Leonard E. MILLER, Personal Representative of the Estate of Larry Eugene Miller, Deceased, Appellant (Plaintiff),

v.

RISSLER & McMURRY CO., a Wyoming Corporation, Appellee (Defendant).

No. 89–201.

Supreme Court of Wyoming.

June 13, 1990.

Fred W. Phifer and Leonard E. Lang, Wheatland, for appellant.

Judith A. Studer and Cameron S. Walker of Schwartz, Bon, McCrary & Walker, Casper, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Larry Eugene Miller was killed when the vehicle in which he was riding failed to negotiate a curve in a service road north of Douglas, Wyoming. Appellant, the personal representative of the deceased's estate, brought this wrongful death action, alleging that Rissler & McMurry Company (Rissler) was negligent in erecting traffic signs on the service road which were inadequate to warn travellers of the abrupt curve. He now appeals from a summary judgment in favor of Rissler.

We affirm.

Appellant raises the following issues:

"1. Is a Construction Company liable for injuries to, or the death of, third persons occurring after completion of its work and its acceptance by the contractee?

"2. Is a contractor who constructed a road according to the plans and specifications designed by the Wyoming Highway Department immune from liability for any subsequent injuries which may occur

as a result of apparent defects in those plans?

"3. Were the plans and specifications for the service road connecting with Wyoming Highway 59 so obviously dangerous and likely to cause injury to others that an ordinary and reasonable contractor of ordinary prudence in his field would or should not follow them.

"4. The Court erred in finding there was no genuine issue of material fact."

Rissler states the issues thusly:

"A. Is a construction contractor who has followed the plans and specifications provided by the state liable to third persons for any defect in those plans and specifications?

"B. Is a contractor liable for lack of adequate signing on a highway where the state highway department knew or should have known what signs were needed?

"C. Is a contractor immune from liability for complying with the plans and specifications provided by a state agency? Or is any negligence on the part of a state agency imputed to a contractor hired by that agency?"

### FACTS

The curve on which Miller's accident occurred is on Wyoming Highway 59 Service Road near its intersection with the 59 Bypass, approximately one mile north of Douglas, Wyoming. Rissler was the general contractor on the state highway construction project which included the Highway 59 Bypass and the curve and intersection where this accident occurred. On September 14, 1987, the Wyoming State Highway Department conducted a final inspection of the project and determined that Rissler had satisfactorily fulfilled the terms of its construction contract and had completed its work in accordance with the plans, specifications, and special provisions of that contract. Rissler received the highway department's notice of completion and acceptance of work the following day.

At approximately 2:15 a.m., on October 3, 1987, Miller and Billy Joe Cook were travelling north on the Highway 59 Service Road in Cook's pickup truck. The two men had just left a local tavern where they had been drinking for nearly three hours. As they entered the disputed curve, at a speed estimated to be between 55 and 65 miles per hour, Cook lost control of the vehicle. The truck shot off the road, flew 80 feet in the air and bounced another 46 feet. Miller was ejected from the vehicle, landing over 50 feet from where the truck came to rest, and sustained fatal injuries. Investigators discovered two packets of cocaine on his body.

### DISCUSSION

In reviewing the propriety of a summary judgment, we examine the affidavits, exhibits and material presented to the district court according to the same standard applied by that court. *Matthews v. Fetzner*, 768 P.2d 590, 592 (Wyo.1989); *Thomas v. South Cheyenne Water and Sewer District*, 702 P.2d 1303, 1304 (Wyo. 1985). Such a judgment is proper if, viewing those materials from the viewpoint of the party opposing the motion, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Bryant v. Hornbuckle*, 728 P.2d 1132, 1135 (Wyo.1986); *Thomas*, 702 P.2d at 1304. Although the drastic remedy of summary judgment is generally inappropriate in negligence actions, we have recognized an exception to the general rule where a party fails to establish a genuine factual issue with respect to a necessary element of his cause of action. *Bryant*, 728 P.2d at 1137; *DeWald v. State*, 719 P.2d 643, 651 (Wyo.1986).

Appellant initiated this action against Rissler, alleging in his complaint:

"7. That the Defendant negligently constructed said curve so that it could not be negotiated at the posted speed limit of Fifty-five (55) miles per hour.

"8. That the Defendant negligently constructed the curve and intersection in such a manner that there was an apparent continuation of the tangent section of the highway so that at night automobile headlights coming from the north make

it appear that the road is continuous. A driver would be unaware of the need to negotiate a sharp curve, stop and then make a right turn to continue on the same road. Defendant was negligent in failing to correct this line of site either by placing a mound of dirt where the old Highway 59 was obliterated to eliminate it or by installing a large enough turn sign to adequately warn the driver and to blot out the driver's view in vehicles that are traveling north on the Service Road approaching the curve.

"9. Defendant was also negligent in failing to install adequate warning signs so that the drivers of vehicles moving in a northerly direction on the Service Road would be aware that they were approaching a sharp left-hand turn which could not be negotiated at the posted speed limit of Fifty-five (55) miles per hour or in the alternative of reducing the speed limit well ahead of the curve.

"10. That the Defendant negligently constructed the curve with a steep embankment on the north side of the curve so that vehicles which failed to negotiate the curve could not recover without overturning."

Rissler moved for summary judgment and submitted supporting affidavits and exhibits which established the following facts:

1. Neither its contract with the Wyoming Highway Department, nor the customs and practices of the construction industry, imposed upon Rissler any responsibilities with respect to the design of either the roadway or the warning signs to be installed on the roadway.

2. Such designs were contained in the plans and specifications for the project, which were prepared by the highway department and which Rissler was contractually obligated to follow in performing work on the project. Such an arrangement is the usual and customary practice in the highway construction industry.

3. Those plans and specifications required Rissler to place two warning signs on the north end of the Highway 59 Access Road: a "Stop" sign at that road's intersection with the Highway 59 Bypass; and a four feet wide by two feet tall "Large Arrow" sign pointing to the left, located on the north side of the curve, 175 feet from the intersection.

4. Rissler completed all of its responsibilities under its contract with the highway department in accordance with the plans and specifications provided for the project and in a workmanlike manner. The construction of the curve and the installation of the warning signs followed the design of the highway department.

5. Both the "Stop" sign and the "Large Arrow" sign were in place prior to the accident.

In opposition to the motion, appellant offered the affidavits of three individuals who had either experienced or observed a number of near accidents on the curve in question and the affidavit of appellant's expert, a civil engineer, who specialized in the investigation and reconstruction of motor vehicle accidents. The three laymen offered little more than their observations that accidents were frequent on the curve. Appellant's expert made no claim in his affidavit that there are deficiencies in the design or construction of the roadway itself. Consequently, appellant's opposition to the summary judgment motion rests largely on the opinion of his accident reconstruction expert that the warning signs installed by Rissler were inadequate to warn northbound travellers of the abrupt change in direction of the Highway 59 Service Road. He observed that the *Wyoming Manual on Uniform Traffic Control Devices*, the statutorily mandated standard for the placement of highway signs, called for additional warning signs on such severe curves.

The statutes upon which appellant's expert relied read:

W.S. 31–5–112:

"The commission shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with this act for use upon highways within this state. The uniform system shall correlate with and so far as possible con-

form to the system set forth in the most recent edition of the 'Manual on Uniform Traffic Control Devices for Streets and Highways' and other standards issued or endorsed by the federal highway administrator.''

W.S. 31–5–113:

"(a) The highway department shall place and maintain such traffic-control devices, conforming to the commission's manual and specifications, upon all state highways *as it deems necessary* to indicate and to carry out this act or to regulate, warn or guide traffic.

"(b) No local authority shall place or maintain any traffic-control device upon any highway under the jurisdiction of the highway department except with the highway department's permission." (emphasis added)

Under these statutes, the highway department's duty to conform its placement of warning signs to the standards of the *Wyoming Manual on Uniform Traffic Control Devices* (Manual) is tempered by a grant of discretionary authority. We have, therefore, rejected the notion that the above statutes require the highway department to strictly comply with the Manual. Accordingly, we have held that neither the department nor its general contractor was negligent where the department's practices were in "substantial compliance" with the Manual and the contractor's placement of warning signs conformed to the department's directions. *Randolph v. Gilpatrick Const. Co., Inc.*, 702 P.2d 142, 146 (Wyo. 1985).

The above statutes impose no duty on highway contractors with respect to the placement of traffic control devices. Neither do the past decisions of this court support the imposition of such a duty. *Phelan v. Read Const. Co.*, 379 P.2d 829 (Wyo 1963), presented a factual situation nearly identical to that of the present case. In *Phelan*, a contractor, engaged in a highway construction project, built a curve in an access road leading to a state highway. During construction of the curve, the contractor had blocked off access to that portion of the roadway. Subsequently, the highway department's project engineer had the contractor remove the barricades and open the access road to travel. The plans and specifications for the project required neither a guardrail nor a curve warning sign to be placed on the curve. Shortly after the removal of the barricades, a car ran off the curve killing one of the passengers and seriously injuring another. Testimony established that it was the highway department's statutory and contractual duty to locate traffic control devices and determine where they should be placed. It was also established that the contractor had fully complied with the plans and specifications and with all other directions of the department with respect to the placement of such devices. We upheld a judgment in favor of the contractor in that case because no testimony was adduced tending to show that the contractor had either violated his contract with the department or was negligent in his construction and maintenance of the roadway or the warning signs required by the department. *Id.* at 831–32.

We reached a similar result in *Reiman Const. Co. v. Jerry Hiller Co.*, 709 P.2d 1271 (Wyo.1985). In that case, suit was filed against a contractor, an architect, and a structural engineering firm to recover for damages to a commercial building when water seeped under the foundation and floor slab of the structure, expanding the underlying soil and causing cracks to form in the building. Prior to designing and drawing up the plans for the building, the architect commissioned a soils engineering firm to conduct certain tests and provide a report on soil conditions at the prospective construction site. That report noted that the soil possessed a high potential for swelling when wet and recommended a number of design features to be included in the building plans, so as to avert any potential problems arising from that condition. Nevertheless, the plans and specifications for the structure did not incorporate those recommended features. We observed that neither the usual practices of the construction industry, nor his contract, placed any design responsibilities on the contractor. However, we also noted that he did have a duty to exercise skill and care in his selec-

tion of materials and in the performance of his work. Accordingly, we held that a contractor could not be held liable for damages caused by defects in the plans and specifications for his job if he completed that job in a workmanlike manner and in substantial compliance with those plans and specifications. *Id.* at 1275–76.

Recognizing that the present case differs little from *Phelan* and *Reiman*, appellant asks us to modify the rule enunciated in those cases to result in contractor liability when, notwithstanding his skillful and careful compliance with a project's plans and specifications, he knew or should have known such compliance would create a dangerous condition. We do not decide whether contractor liability should be modified as contended by appellant, for nothing was presented in this case by affidavit or otherwise that raised the issue of whether Rissler knew or should have known of the alleged danger.

Appellant does not contend that Rissler had actual knowledge that compliance with the department's plans and specifications would create a hazard. He merely asserts that Rissler *should have known* that such was the case, i.e., that Rissler should be charged with the skill and knowledge necessary to determine from the plans and specifications that the signs were insufficient to warn travellers of the curve. Appellant, however, provides us with no factual or legal basis for that assertion. He cites no authority requiring highway construction contractors to possess or exercise the expertise in highway safety design and engineering necessary for the proper placement of traffic control devices. Likewise,

he has failed to demonstrate either that such expertise is customary in the trade or that Rissler in fact possessed such knowledge and skills.

Appellant failed to demonstrate that a genuine issue of material fact existed with respect to Rissler's knowledge that its compliance with the contract would create a danger to the travelling public. Since it is uncontested that Rissler installed the signs in compliance with the project's plans, and that it did so in a skillful and workmanlike manner, appellant raised *no* genuine issue of material facts which would entitle him to relief.

■ Appellant's expert concluded, though not provided for in the highway department design, specification and contract, that Rissler nevertheless should have installed additional signs prior to the opening of the road to the public. No rational basis is stated for this conclusion. The affidavit of appellant's expert will not suffice to overcome Rissler's summary judgment motion. Bare conclusory statements of an expert, regarding the existence of a duty, are insufficient to prevent a summary judgment. *Thomas*, 702 P.2d at 1307. Rissler was, therefore, entitled to a summary judgment as a matter of law.

The order of the district court is affirmed.